## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **MARVIN RHODES JR.,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**REALTEAM LLC**, a Michigan limited liability company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## **CLASS ACTION COMPLAINT**

Plaintiff Marvin Rhodes Jr. ("Plaintiff" or "Rhodes Jr.") brings this Class Action Complaint and Demand for Jury Trial against Defendant RealTeam LLC, ("Defendant" or "RealTeam") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls without consent to consumers whose telephone numbers were registered on the National Do Not Call Registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Marvin Rhodes Jr. is a resident of Southfield, Michigan.

2. Defendant RealTeam is a Michigan limited liability company headquartered in Shelby Township, Michigan. Defendant RealTeam conducts business throughout this District, Michigan, and the U.S.

## JURISDICTION AND VENUE

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper because the Defendant resides in this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in March 2022 alone, at a rate of 140.8 million calls per day. www.robocallindex.com (last visited April 5, 2022).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. Defendant RealTeam is a Michigan based real estate agency.

17. Defendant RealTeam makes unsolicited telemarketing calls to consumers who are registered on the DNC.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

18. To make matters worse, Defendant RealTeam continues to place calls to consumers even after they have explicitly told RealTeam to stop calling.

19. Defendant RealTeam hires employees to place cold calls to consumers to solicit their real estate services, for instance:

- A job post by the Defendant to hire for the role of Inside Sales Agent:[3]

Description

-Prospect for new clients on a daily basis from various lead sources
-Respond to inbound leads from all internet lead sources, sign calls, and etc.
-Schedule appointments for Listing and Buyer Specialists
-Input/manage client & lead databases
-Conduct lead follow up & nurture leads until appointments are set

-Attend training and establish daily role-play partners.
-Willing to be held accountable for goals & results.
-Call past clients and your sphere of influence to ask for referrals.
-Manage contact database system.
-Manage 50+ new leads each week & work existing leads to convert into buying/listing appointments.
-Practice, memorize and internalize scripts at least 1-2 hours /week.
-Prospect for new clients on a daily basis 1-2 hrs/day.
-Do 5-10 hours of lead follow-up per week.
-Make 50 to 100 contacts per week calling on:
-Expired Listings
-FSBOs
-Sphere of Influence
-Past Clients
-Just Listed & Just Solds
-Open Houses

- A job post by the Defendant to hire a Real Estate Agent/Broker: [4]

---

[3] https://www.indeed.com/viewjob?jk=254e24269c372800
[4] https://apply.workable.com/realteam-real-estate/j/98B609B39D/

- Web-based training program with our full-time training director
- Continued training and one on one coaching to ensure your success

Costs paid for by brokerage include:

- Leads!!!!
- State of the art client relationship management software (CRM)
- Inside sales team
- No desk fees or office fees
- Lockboxes
- For sale signs
- Business cards
- Professional photography
- Auto dialers
- Full-time administrative staff

Our growing team is looking for highly motivated sales-minded candidates who enjoy working in a team-orientated atmosphere. You will be responsible for assisting your clients through the home buying or home selling experience.

Responsibilities will include:

- Consult with clients on market conditions
- Build your business through outbound lead generation techniques
- Effective communication with your client throughout the sales process
- Effectively negotiate on client's behalf

20. Defendant trains its employees to place cold calls to consumers to solicit their services. For instance,

- On February 17, 2020, Defendant RealTeam posted a video of their training session where the trainers are demonstrating how to make a solicitation call.[5]

- On January 14, 2019, Defendant RealTeam posted a video of a training session conducted by broker Tommy Lower, where he trains the agent to place cold calls.[6]

---

[5] https://www.youtube.com/watch?v=W0GVUq3KTpI
[6] https://www.facebook.com/mirealteam/videos/189705597066884/

6

21. There are numerous complaints posted online regarding unsolicited telemarketing calls and text messages other consumers also received from Defendant RealTeam, including complaints of receiving solicitation from the Defendant even after they instructed the Defendant to stop calling, for instance:

- "Real estate agent calling to find out if you're interested in selling. No and blocked."[7]

- "Called to solicit my home for sale, I am on the do not call list."[8]

- [9]

- [10]

## PLAINTIFF RHODES JR.'S ALLEGATIONS

22. Plaintiff Rhodes Jr. registered his cell phone number on the DNC on October 25, 2017.

23. Plaintiff's cell phone number is not associated with a business and is used for personal use only.

---

[7] https://800notes.com/Phone.aspx/1-248-953-5600
[8] *Id.*
[9] Google Reviews: RealTeam Real Estate, Shelby Twp, MI. Shortened URL: [shorturl.at/hzIP6]
[10] Google Reviews: RealTeam Real Estate, Warren, MI. Shortened URL: [shorturl.at/aqtF8]

24. In March of 2022, Plaintiff started receiving unsolicited telemarketing calls from Defendant RealTeam offering Defendant's real estate services to him and seeking information about whether he was planning to move.

25. On or around March 2, 2022, Plaintiff received a telemarketing call from the Defendant. Plaintiff was not looking to buy or sell a property and was not interested in the Defendant's services. Plaintiff informed the Defendant that his phone number is on the National Do Not Call list and that the Defendant should not be calling him.

26. On March 2, 2022, at 8:59 AM, Plaintiff received a text message from the phone number 586-945-7797, with a picture of Defendant's employee Aris Logan's business card, despite having made a clear request to the Defendant to remove his phone number from the Defendant's prospecting list.



27.     Plaintiff continued to receive calls from the Defendant despite making requests to stop receiving calls from them, and despite informing them that his phone number is registered on the National Do Not Call list. For instance, Plaintiff received a call on his cell phone on March 9, 2022, at 9:09 AM, using the same phone number as before 586-945-7797, from Defendant's employee Aris Logan.



28. The phone number from which Plaintiff was called, 586-945-7797, is answered by Defendant's employee Aris Logan, and this phone number is also advertised on Defendant's website as Logan's phone number:

[11]

29. Aris Logan is a licensed as a Real Estate Salesperson with Defendant RealTeam since July 2020.[12]

---

[11] https://www.mirealteam.com/aris-logan/
[12] https://aca-prod.accela.com/MILARA/GeneralProperty/LicenseeDetail.aspx?LicenseeNumber=6501427980&LicenseeType=Real+Estate+Salesperson

10

30. The unauthorized solicitation telephone calls that Plaintiff received from RealTeam have harmed Plaintiff Rhodes Jr. in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

31. Seeking redress for these injuries, Plaintiff Rhodes Jr., on behalf of himself and Classes of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

32. Plaintiff Rhodes Jr. brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant or its agent called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant, (4) including at least once after the person requested that Defendant stop calling.

33. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in

11

which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

34. **Typicality and Numerosity**: Plaintiff is a member of the Classes, and on information and belief, there are hundreds, if not thousands of members of the Classes, all of which received calls from Defendant as part of a single telemarketing campaign, and joinder of all members is impracticable.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    whether the calls violated the TCPA;

    (b)    whether the Defendant or an agent calling on behalf of Defendant placed multiple calls within a 12-month period to Plaintiff and other

    consumers whose telephone numbers were registered with the DNC for at least 30 days at the time of each call;

(c) whether the Defendant or an agent calling on behalf of Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

36. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

37. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's

13

challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rhodes Jr. and the Do Not Call Registry Class)**

38. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

39. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

40. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a

violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

41. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Rhodes Jr. and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

42. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Rhodes Jr. and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

43. As a result of Defendant's conduct as alleged herein, Plaintiff Rhodes Jr. and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

44. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Rhodes Jr. and the Internal Do Not Call Class)

45. Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

46. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf

16

the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47. Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

48. The TCPA provides that any "person who has received more than one

17

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

49. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rhodes Jr. individually and on behalf of the Classes, prays for the following relief:

a. An Order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Rhodes Jr. as the representative of the Classes; and appointing his attorneys as Class Counsel;

b. An award of damages and costs;

c. An Order declaring that Defendant's actions, as set out above, violate the TCPA;

d. An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Rhodes Jr. requests a jury trial.

DATED this 26th day of April, 2022.

                **MARVIN RHODES JR.**, individually and on behalf of all others similarly situated,

                By: /s/ *Stefan Coleman*
                Stefan Coleman
                COLEMAN PLLC
                66 West Flagler Street
                Suite 900
                Miami, FL 33130
                Telephone: (877) 333-9427
                law@stefancoleman.com

                Avi R. Kaufman
                kaufman@kaufmanpa.com
                KAUFMAN P.A.
                237 South Dixie Highway, Floor 4
                Coral Gables, FL 33133
                Telephone: (305) 469-5881

                *Attorneys for Plaintiff and the putative Classes*